THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | | Case No. 3:17-cr-95 |
| v. | : | |
| KEVIN R. TINCHER, | | Judge Walter H. Rice |
| Defendant. | : | |

---

DECISION AND ENTRY OVERRULING MOTION (DOC. #62) AND SUPPLEMENTAL MOTION (DOC. #65) TO MODIFY SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A) OF DEFENDANT KEVIN R. TINCHER

---

Before the Court are the Motion (Doc. #62) and Supplemental Motion (Doc. #65) to Modify Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) of Defendant Kevin R. Tincher. For the reasons set forth below, the Motions are OVERRULED.

**I.    Factual Background and Procedural History**

On April 29, 2019, Defendant was sentenced to 120 months imprisonment after being convicted on one count of possession with intent to distribute at least 500 grams of a mixture or substance containing methamphetamine, at least 500 grams of a mixture or substance containing cocaine, and at least one kilogram of a mixture or substance containing heroin. (Judgment, Doc. #56, PAGEID 115-17, citing 21 U.S.C. § 841(a)(1), (b)(1)(A-B); Indictment, Doc. #29). This 120-month sentence is "consecutive to a revocation of supervised release on a separate case, for which he served a lengthy term of pre-trial incarceration. (Doc. #65, PAGEID

235; *see also* Doc. #56, PAGEID 117). Defendant is forty-seven years old with a present release date of May 2, 2026.[1]

On December 23, 2021, Defendant filed a request for compassionate release with the warden at Federal Correctional Institution ("FCI")- Manchester. (Release Request, Doc. #62-1, PAGEID 221-22). Neither Defendant nor Plaintiff United States of America ("Government") contends that the warden responded to the request. On February 2, 2022, Defendant filed the Motion[2] *pro se*, asserting that he needs to be able to take care of his children, who were removed from their mother's custody by court order in September 2021, after the mother had refused to submit to a drug screening, and his childrens' widowed grandmother, who suffered a stroke in November 2021.[3] (Doc. #62, PAGEID 190). Defendant argues that he has maintained employment at FCI-Manchester, has participated in a program to lower recidivism, and, having been adjudged by the Bureau of Prisons ("BOP") not to be a threat to anyone in the community, has been transferred to a lower security satellite camp facility from his original place of incarceration. (*Id*. at PAGEID 192-93). Given that "evidence of post-sentence rehabilitation is likely the

---

[1] https://www.bop.gov/inmateloc/ (last accessed Aug. 27, 2024).

[2] The Motion and its attachments were filed under seal because the attachments contained personally identifying information of Defendant's children, none of which is relevant to or referenced in this Order.

[3] The Government states in its memorandum *contra*, and Defendant does not dispute, that Defendant stated that he has two minor children, J.T. and K.T., in his interview for the presentence investigation report. However, he identified only J.T. as his biological child, stating that K.T. is a minor child "whom he considered as his own[.]" (Doc. #69, PAGEID 255).

2

most critical of core considerations for the court in a § 3582(c) proceeding[,]" Defendant claims that the 18 U.S.C. § 3553(a) factors weigh in favor of release. (*Id*. at PAGEID 193).

On February 9, 2022, Defendant, represented by counsel, filed the Supplemental Motion. Therein, he again argues that his children's mother losing custody and their grandmother's stroke mean that he must care for all three of them, and that is an extraordinary and compelling reason for release. (Doc. #65, PAGEID 241-42, citing *United States v. Seals*, 509 F. Supp. 3d 259, 263 (E.D. Pa. 2020); *United States v. Jimenez*, No. 2:18-cr-61, 2021 U.S. Dist. LEXIS 171693 (S.D. Ohio Sept. 9, 2021) (Graham, J.)). He further asserts that his post-incarceration rehabilitation, low-risk determination by BOP, and lower risk of recidivism due to age outweigh the seriousness of his offense, and that, again, the 18 U.S.C. § 3553(a) factors weigh in favor of release. (*Id*. at PAGEID 242-44, citing *United States v. Sherwood*, 986 F.3d 951, 953-54 (6th Cir. 2021).

In its memorandum *contra*, the Government notes that Defendant's conviction in this case was his ninth arrest since 1995 for violent or drug-related crimes, and that in the instant case, the federal task force searching Defendant's property "discovered bulk amounts of controlled substances, including methamphetamine, cocaine, and heroin as well as guns and ammunition." (Doc. #69, PAGEID 254; *accord*; Stmt. of Facts, Doc. #45, PAGEID 83). The Government also notes that on December 17, 2021, the grandmother of Defendant's children, was granted temporary custody of Defendant's biological

3

son, J.T., despite suffering a stroke just one month prior, and that K.T's biological mother retained custody of K.T., subject to Child Services supervision (Doc. #69, PAGEID 256, 259, citing State Court Record, Doc. #62-1, PAGEID 215-17). Thus, Defendant is not the sole caretaker for either child; nor is he the legal custodian of either J.T. or K.T. Thus, the Government claims, caring for children or an incapacitated parent cannot be an extraordinary and compelling reason for release.

Moreover, the Government argues, the severity of Defendant's crimes for which he is currently incarcerated—which were committed while on supervised release—along with his lengthy serious criminal history mean that he still "poses a danger to the safety of the community and should not be released." (Doc. #69, PAGEID 260). Specifically, the Government asserts that Defendant "attempted to deliver thousands of unit dosages of methamphetamine and heroin for distribution into this community. His release now would undermine not only respect for the law but the need to promote general deterrents[,]" and, thus, the 18 U.S.C. § "3553(a) factors counsel against his release." (*Id*.).

In reply, Defendant argues that he is the most appropriate caregiver for J.T. and K.T., and that his release would enable him to obtain legal custody. (Reply, Doc. #70, PAGEID 264). He further claims that his "present danger to the community is speculative" and that the risk of returning to prison will prevent any recidivism if he is placed on supervised release. (*Id*. at PAGEID 264, 265). On November 1, 2022, Defendant filed a Supplemental Reply, stating for the first time that he is in the process of being assigned to home confinement, and that he is

4

being treated "for pulmonary and respiratory problems, which all point to a 'diagnosis of COPD,' and/or 'Emphysema[.]" (Doc. #71, PAGEID 266). "These conditions and situations, in combination with the grounds previously asserted, and their continuing nature, indeed make the sentence and confinement overall and under the totality of the circumstances, 'more severe' than likely the Court contemplated at the time of his sentencing." (*Id.*, citing *United States v. Lora*, No. No. 16 Cr. 44-5, 2022 U.S. Dist. LEXIS 65734, *13 (S.D.N.Y. Apr. 8, 2022)).

The matter is now ripe for decision.

## II. Legal Standards

A district court may, in certain limited circumstances, grant "compassionate release" and modify a term of imprisonment after it has been imposed:

> [T]he court ... may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), (1) after considering the factors set forth in section 3553(a) to the extent that they are applicable, (2) if it finds that extraordinary and compelling reasons warrant such a reduction . . .(3) and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. [4]

18 U.S.C. § 3582(c)(1)(A)(i) (numeration added). Defendants seeking compassionate release may file a motion with the district court only after they submit a request to his or her warden to move for compassionate release on their

---

[4] The United States Court of Appeals for the Sixth Circuit has held that the Guidelines Section 1B1.13 is not an applicable policy statement with respect to motions for compassionate release filed by prisoner defendants. *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021). Nonetheless, the Court may look to Section 1B1.13 for guidance as to what constitutes an "extraordinary and compelling reason[.]" *Id.* at 519-20.

5

behalf and either (a) the warden denies the request, or (b) the warden does not respond within thirty days from the submission of the request. *Id.* Failure to comply with the exhaustion strictures set forth in the statute deprive a court of authority to entertain the petition. *See United States v. Alam*, 960 F.3d 831, 834 (6th Cir. 2020) (internal quotation marks and citation omitted) (First Step Act's exhaustion requirement is, in essence, a "mandatory claim-processing rule[]" that, when properly invoked, courts must enforce by dismissing the motion).

If the district court adjudges that a defendant has not met one of the elements, then it may overrule a motion for compassionate release without discussing any of the other elements. *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021). Further, relief under the statute is wholly discretionary; even if a defendant meets all three elements of the statute, the Court may, but need not, order compassionate release. *United States v. Jones*, 980 F.3d 1098, 1106 (6th Cir. 2020).

## III. Analysis

Defendant has failed to set forth an extraordinary and compelling reason justifying release. The Sentencing Commission does allow as a compelling reason "[t]he death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition." GUIDELINES § 1B1.13(b)(3)(A). While there is no bright-line rule for what constitutes "incapacitation of the caregiver," several courts that have examined the issue have

6

concluded "that the family member must be wholly dependent on the defendant (*and only the defendant*) for care." *United States v. Mirabal*, No. 16 Crim. 272 2023 WL 2401377, *7 (S.D.N.Y. Mar. 8, 2023) (emphasis added), citing *United States v. Lindsey*, No. 13 Crim. 271, 2021 WL 37688, *3 (S.D.N.Y. Jan. 4, 2021), *reconsideration denied at* 2021 WL 2186975 (S.D.N.Y. May 28, 2021); *see also United States v. Miles*. No. 7:16-cr-57, 2023 WL 3309875, *7 n.6 (W.D. Va. May 8, 2023) ("Courts have occasionally found extraordinary and compelling circumstances in . . . caretaking claims, but only in cases of extreme need where the defendant is the only possible caretaker[.]"). Even in *Seals*, relied upon by Defendant, the court held that a defendant must show "that family members, including minor children, are in *dire need* of a defendant's caregiving, and other family members are afflicted by *incapacitating, life-threatening* illnesses[.]" 509 F. Supp. 3d at 263 (emphasis added).

Here, J.T.'s grandmother was sufficiently recovered from her stroke to assume temporary custody of J.T., meaning both that: (a) Defendant is not J.T.'s only caregiver; and (b) J.T.'s grandmother is not incapacitated or wholly dependent on another, much less Defendant, for care. Moreover, as discussed above, K.T.'s biological mother is caring for K.T., and Defendant does not seem to have any legal relationship to her, anyway. Thus, Defendant's need to help care for his children and their grandmother is not an extraordinary and compelling reason for release.

Defendant's health concerns are no more availing. Chronic obstructive pulmonary disease ("COPD") and emphysema fall well short by themselves of

7

constituting extraordinary and compelling reasons for release. The Guidelines Policy Statement, while not binding, is instructive as to what constitutes a medical circumstance supporting release:

> (1) Medical Circumstances of the Defendant.—
>
> (A) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (B) The defendant is—
>
> (i) suffering from a serious physical or medical condition,
>
> (ii) suffering from a serious functional or cognitive impairment, or
>
> (iii) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.
>
> (D) The defendant presents the following circumstances—
>
> (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
>
> (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing

8

>outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
>
>(iii) such risk cannot be adequately mitigated in a timely manner.

UNITED STATES SENT'G GUIDELINES §1B1.13(b).

Defendant does not argue that his COPD or emphysema is terminal, or that he is not expected to recover. While he makes a conclusory statement that hie has been treated "not adequately in the prison health care system" (Doc. #71, PAGEID 266), his medical records show that, while incarcerated, he was prescribed an albuterol inhaler for daily use, which has alleviated some of his symptoms. (Clinic Records, Doc. #71-1, PAGEID 274). His respiratory problems, regardless of whether they are ultimately diagnosed as COPD or emphysema, fall well short of the dire medical conditions constituting an extraordinary or compelling reason for release. His Motions fail for that reason alone.[5] *Elias*, 984 F.3d at 519.

Defendant's Motion would also fail even if an extraordinary and compelling reason for release existed. As the Government notes (Doc. #69, PAGEID 254), and Defendant does not dispute, his 2017 arrest was the culmination of more than twenty years of violent and drug-related crime. While Defendant's efforts at rehabilitation during his current incarceration are admirable, they do little to assuage the Court's fears of recidivism—after all, he acquired firearms and significant amounts of illegal drugs to sell while on supervised release. In sum,

---

[5] While Defendant does not expressly argue that his respiratory issues make him particularly susceptible to severe COVID-19, and that such susceptibility is an extraordinary and compelling reason, the Court notes that such an argument is not viable in light of *United States v. Lemon*, 15 F.4th 747, 751 (6th Cir. 2021).

Defendant is an ongoing threat to public safety, UNITED STATES SENT'G GUIDELINES § 1B1.13(a)(2), which, while it may not be the sole reason for denying compassionate release, *Sherwood*, 986 F.3d at 954, is a factor the Court may consider in concluding that a reduction of Defendant's sentence to time served and release from confinement would not serve "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense[.]" 18 U.S.C. § 3553(a)(2)(A). As Defendant has failed to satisfy the 18 U.S.C. § 3553(a) factors, his Motion must be overruled for that reason as well.

### IV. Conclusion

For the reasons set forth above, Defendant's Motion (Doc. #62) and Supplemental Motion (Doc. #65) Compassionate Release are OVERRULED.

The captioned case remains terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

IT IS SO ORDERED.

August 30, 2024

*Walter H. Rice*
WALTER H. RICE, JUDGE
UNITED STATES DISTRICT COURT